**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

-----------------------------------------------------------------------X

OMAR S. MONTOYA,

        Plaintiff,

                                                        CIVIL ACTION NO.:

   -v-                                             3:17-cv-01541

The FEDERAL BUREAU OF INVESTIGATION;
The UNITED STATES DEPARTMENT OF JUSTICE;
UNITED STATES ATTORNEY GENERAL                June 11, 2018
JEFFERSON SESSIONS; and CHRISTOPHER WRAY,
Director of the Federal Bureau of Investigation;

        Defendants

-----------------------------------------------------------------------X

## AMENDED COMPLAINT

        OMAR S. MONTOYA, the Plaintiff herein ("Plaintiff"), brings this action against

The Federal Bureau of Investigation, The United States Department of Justice, the United States

Attorney General Jefferson Sessions and Christopher Wray, Director of the Federal Bureau of

Investigation (collectively "Defendants") as follows:

## NATURE OF CLAIMS

        1.     This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as

amended, 42 U.S.C. § 2000e, et seq. Plaintiff alleges that he was discriminated and/or retaliated

against and subjected to a hostile work environment because of his participation in civil rights

activities under Title VII.

        2.     Plaintiff seeks a judgment: (a) declaring that the actions of defendants complained

of herein were unlawful and in violation of Title VII; (b) ordering preliminary and permanent

injunctive relief prohibiting future retaliation against plaintiff and other similarly situated employees for lawful participation and/or opposition protected under Title VII of the Civil Rights Act of 1964 as amended; (c) ordering defendants to promote plaintiff to the GS-12 level and the appropriate step; (d) ordering defendants to pay plaintiff full back pay and retroactive benefits and seniority; (e) ordering defendants to pay plaintiff appropriate compensatory damages for emotional distress; and (f) awarding plaintiff costs, disbursements and reasonable attorneys fees, including those costs, disbursements, and attorneys fees incurred at the administrative level.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction pursuant to 28. U.S.C. § 1331 since Plaintiff alleges claims that arise under the Constitution and laws of the United States, including but not necessarily limited to, claims pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-5(f)(3), 2000e-5(g), 2000e-16(c) and 29 C.F.R. § 1614.108(f).

4.      Venue is proper as all acts complained of occurred within the Jurisdiction of the Federal District Court for the District of Connecticut.

## PARTIES

5.      Plaintiff Omar Montoya is, and at all material times herein has been, a citizen of the United States and citizen and resident of the State of Connecticut.  He is a GS-11 Electronics Technician ("ET") employed by the United States Department of Justice, Federal Bureau of Investigation.

6.      Defendant FEDERAL BUREAU OF INVESTIGATION ("FBI") is an Agency of the United States Government and is headquartered in Washington, D.C.  The FBI is an executive agency within the meaning of 42 U.S.C. § 2000e-16(a).

7.      Defendant UNITED STATES DEPARTMENT OF JUSTICE ("DOJ") is an agency of the United States government located in Washington D.C.  Defendant DOJ is an executive agency within the meaning of 42 U.S.C. § 2000e-16(a).

8.      Defendant JEFFERSON SESSIONS, and his predecessors and successors, is and at all times herein has been employed by the United States Department of Justice as the Attorney General of the United States in Washington D.C.  Defendant Sessions is being sued in his official capacity and in his capacity under 42 U.S.C. § 2000e-16(c).

9.      Defendant CHRISTOPHER WRAY, and his predecessors and successors, is and at all material times herein has been employed by the United States Department of Justice as the Director of the FBI.  Defendant Wray is being sued in his official capacity and in his capacity under 42 U.S.C. § 2000e-16(c).

## <u>ADMINISTRATIVE PROCEDURES</u>

10.      The facts set forth in this complaint were reviewed by the FBI and, by administrative action taken on or about May 8, 2017 and February 16, 2018, the information used in this complaint was determined to be unclassified by the FBI.

11.      On May 19, 2016, plaintiff initiated an administrative action within the FBI's office of Equal Employment Opportunity Affairs ("EEO") when he had an "initial contact" with

an FBI EEO counselor.  On May 31, 2016, plaintiff was interviewed by an FBI EEO counselor and his EEO filing was subjected to the necessary pre-complaint process.

12.     On June 14, 2016, plaintiff received Notice of his final interview with the FBI EEO Counselor and filed a formal Complaint of Discrimination with the FBI's EEO office, which alleged, inter alia, claims of discrimination, retaliation, and harassment against the FBI and his FBI Supervisors based inter alia on his participation in the EEO process ("First Set of Charges").  On or about June 28, 2016, plaintiff received acknowledgment from the EEO Office of receipt of his formal complaint of discrimination.

13.     On July 1, 2016, plaintiff amended the First Set of Charges contained in his first formal complaint of discrimination, retaliation and harassment to include additional allegations of discrimination, retaliation and/or harassment by the FBI and his FBI supervisors based on his participation in the EEO process and the EEO complaint(s) he filed.

14.     On August 11, 2016, the FBI EEO office informed plaintiff that it had accepted for investigation six (6) of the issues plaintiff raised in his complaint of discrimination, retaliation and harassment, and that plaintiff could file a civil action in the appropriate United States District Court after 180 days from the date he filed the most recent amendment to his complaint with the FBI EEO office.

15.     On or about August 29, 2016, plaintiff was interviewed for the first time by the FBI EEO in connection with the First Set of Charges contained in his formal complaint.

16.     On or about August 30 and September 2, 2016, Plaintiff filed additional amendments to the First Set of Charges in his first formal complaint alleging, inter alia, further

acts of discrimination, retaliation, harassment against the FBI and his FBI supervisors, based on his participation in the EEO process and the EEO complaint(s) he filed.

17.     On or about September 14, 2016, the FBI EEO informed plaintiff that 11 of the allegations set forth in the complaint and the amendments thereto had been accepted for investigation, and that plaintiff could file a civil action in the appropriate United States District Court after 180 days from the date he filed the most recent amendment to his complaint with the FBI EEO office.

18.     On or about September 14, 2016, plaintiff amended the First Set of Charges contained in his first formal complaint alleging, inter alia, additional allegations of discrimination, retaliation, and harassment against the FBI and his FBI supervisors, based on his participation in the EEO process and the EEO complaint(s) he filed.

19.     On or about September 29, 2016, The FBI EEO informed plaintiff that 12 of the allegations set forth in the complaint and the amendments thereto had been accepted for investigation, and that plaintiff could file a civil action in the appropriate United States District Court after 180 days from the date he filed the most recent amendment to his complaint with the FBI EEO office.

20.     On or about October 11, 2016, plaintiff amended the First Set of Charges contained in his first formal complaint alleging, inter alia, additional allegations of discrimination, retaliation, and harassment against the FBI and his FBI supervisors, based on his participation in the EEO process and the EEO complaint(s) he filed.

21.     On or about November 15, 2016, the FBI EEO informed plaintiff that 16 of the allegations set forth in the complaint and the amendments thereto had been accepted for

investigation, and that plaintiff could file a civil action in the appropriate United States District Court after 180 days from the date he filed the most recent amendment to his complaint with the FBI EEO office.

22.     On or about November 28, 2016, plaintiff was interviewed for the second time by the FBI EEO in connection with the First Set of Charges contained in his first formal complaint.

23.     On or about December 12, 2016 and February 21, 2017, plaintiff attempted to amend the First Set of Charges contained in his first formal complaint alleging, inter alia, additional allegations of discrimination, retaliation, and harassment against the FBI and his FBI supervisors, based on his participation in the EEO process and the EEO complaint(s) he filed.

24.     On or about March 20, 2017, the FBI EEO office declined to amend the First Set of Charges contained in plaintiff's first formal complaint and instead directed plaintiff to initiate a new EEO counseling within 15 days, in connection with his proposed December 12, 2016 and February 21, 2017 amendments to the allegations of discrimination, retaliation, and harassment then pending before the FBI EEO.  In accordance with the FBI EEO's March 20 action, it deemed plaintiff to have initialed EEO counseling on December 12, 2016.

25.     On or about March 20, 2017, in accordance with the instructions of the FBI EEO office, plaintiff initiated an administrative action with the FBI's EEO when he had an "initial contact" with an FBI EEO counselor in connection with his December 12, 2016 and February 22, 2017 proposed amendments to the First Set of Charges of discrimination, retaliation, and harassment he brought against the FBI and his FBI supervisors (hereafter "Second Set of Charges").  On or about March 23, 2017, plaintiff was interviewed by an FBI EEO counselor in

connection with his Second Set of Charges and his EEO filing was subjected to the necessary pre-complaint process.

26.     On or about May 8, 2017, plaintiff was provided with copies of redacted and declassified documents related to his EEO case contained in the EEO Report of Investigation in connection with his First Set of Charges of discrimination, retaliation, and harassment against the FBI and his FBI supervisors.

27.     On or about May 19, 2017, plaintiff received notice of his final interview with the FBI EEO counselor and his right to file a formal discrimination complaint in connection with his Second Set of Charges of discrimination, retaliation, and harassment against the FBI and his FBI supervisors.

28.     On or about May 26, 2017, plaintiff filed his second formal complaint in connection with his Second Set of Charges, which alleged, inter alia, claims of discrimination, retaliation, and harassment against the FBI and his FBI supervisors based, inter alia, on his participation in the EEO process and the claims of discrimination, retaliation, and harassment he had filed with the FBI EEO.

29.     On June 6, 2017, plaintiff requested that the FBI render a Final Agency Decision pursuant to, inter alia, to 29 C.F.R. § 1614.110, in connection with his First Set of Charges and his first formal complaint of discrimination, retaliation and harassment.  On June 7, 2017, the FBI acknowledged receipt of plaintiff's request for a Final Agency Decision in connection with his First Set of Charges and first formal complaint.

30.     On or about August 18, 2017, the FBI EEO office informed plaintiff that it had accepted for investigation one (1) of the issues he had raised in his Second Set of Charges

contained in his second formal complaint of discrimination, retaliation, and harassment against the FBI and his FBI supervisors, and that plaintiff could file a civil action in the appropriate United States District Court after 180 days from the date he filed the most recent amendment to his complaint with the FBI EEO office.

31.     On or about November 10, 2017, plaintiff was interviewed by the FBI EEO in connection with his Second Set of Charges contained in his second formal complaint.

32.     On or about February 16, 2018, plaintiff was provided with copies of redacted and declassified documents related to his EEO case in the EEO Report of Investigation in connection with his Second Set of Charges contained in his second formal complaint of discrimination, retaliation, and harassment against the FBI and his FBI supervisors.

33.     On or about February 22, 2018, plaintiff requested that the FBI render a Final Agency Decision pursuant to, inter alia, to 29 C.F.R. § 1614.110, in connection with his Second Set of Charges contained in his second formal complaint.  On or about April 11, 2018, the FBI acknowledged receipt of plaintiff's request for a Final Agency Decision in connection with his Second Set of Charges.

34.     More than 180 days have passed since plaintiff filed his initial formal complaint(s) and his amended complaint(s) in connection with both his First and Second Sets of charges of discrimination, retaliation, and harassment against the FBI and his FBI supervisors, based, inter alia, upon his participation in the EEO process and his EEO complaints, and no final agency decision has been issued to plaintiff.

35.     Plaintiff has exhausted all of his administrative remedies.

8

## FACTUAL ALLEGATIONS

### Background History

36.     Plaintiff was born in Ecuador.  In or about March 1993, plaintiff emigrated from Ecuador and became a legal resident of the United States of America.  In or about December 17, 2004 plaintiff became naturalized as a citizen of the United States of America.

37.     From in or about 1994 to in or about 2002, plaintiff served as a member of the United States Armed Forces.  Beginning in or about 1994, plaintiff enlisted in the United States Army.  During his service in the Army, plaintiff was deployed to Saudi Arabia and South Korea. While serving in the Army, plaintiff performed a collateral duty as an EEO counselor.  In or about 2002, plaintiff was honorably discharged from his service in the Army.

38.     From in or about 2003 to in or about 2006, plaintiff was a civilian contractor for the United States Armed Forces.  During this period, plaintiff was deployed to Iraq and Central America as an aircraft mechanic.

39.     From in or about 2007 to in or about 2009, plaintiff attended Central Connecticut State University.  His studies at Central Connecticut State University included the design, development, testing, manufacture, installation, and repair of electronic and electrical equipment. In or about 2009, plaintiff graduated from Central Connecticut State University with a Bachelor of Arts degree in Electronics Technology.

40.     On or about October 12, 2010, plaintiff was hired by the FBI as an Electronics Technician ("ET"), GS-7, Step-1 with a full top secret security clearance.

41.     The FBI assigned plaintiff as an ET to Squad 9 of its field office for the New Haven Division ("NHD").  Squad 9 is a technical administrative squad which provides technical support (e.g., IT, communications, etc.) to the FBI's investigative squads.

42.     Plaintiff is currently employed as a GS-11, Step-3 ET in the FBI's NHD.

43     Before the events described herein, plaintiff's job performance as an ET was always rated a satisfactory or better and on many occasions he received excellent performance evaluations from his FBI supervisors.  In addition, his work performance was often praised by his FBI supervisors.

44.     Special Agent in Charge ("SAC") Patricia Ferrick is the senior FBI management official in the State of Connecticut and in charge of the FBI's NHD field office.

45.     Assistant Special Agent in Charge ("ASAC") Kevin Kline is SAC Ferrick's direct subordinate and second in command of the NHD field office.

46.     ASAC Daniel O'Brien supervised the Criminal Branch of the FBI's NHD and was the second ASAC in charge of the NHD field office (after ASAC Kline).

47.     Supervisory Special Agent ("SSA") Todd Kalish supervised Squad 9 in the FBI's NHD field office.

48.     Telecommunications Manager ("TM") Mark DeWolfe supervised the ET's assigned to Squad 9 in the FBI's NHD.

49.     SAC Ferrick, ASAC Kline, ASAC O'Brien, SSA Kalish, and TM DeWolfe all supervised plaintiff in the FBI's NHD during the periods relevant to this complaint.

Protected Conduct

50.     In or about 2012, plaintiff volunteered for a collateral duty as an FBI EEO counselor.  The FBI provided plaintiff with EEO training.  In his capacity as an EEO counselor, plaintiff accepted, processed, and counseled initial EEO complaints for FBI employees. Plaintiff continued to perform the duties of an EEO counselor through and until March 2016.

51.     On or about April 24, 2015, plaintiff assisted an FBI Special Agent ("SA1") initiate an EEO complaint against his FBI supervisors, including SAC Ferrick and ASAC Kline. SA1's EEO complaint alleged, inter alia, claims of discrimination and retaliation against his FBI supervisors, including but not necessarily limited to SAC Ferrick and ASAC Kline.

52.     On or about April 24, 2015, as part of his duties as an EEO counselor, plaintiff interviewed both SAC Ferrick and ASAC Kline in connection with SA1's EEO complaint and in an effort to mediate a resolution to the EEO complaint.  When he interviewed SAC Ferrick and ASAC Kline, however, both FBI supervisors resisted plaintiff's efforts to explore a mediated solution and demonstrated contempt for the EEO process.  In fact, when plaintiff met with ASAC Kline to discuss SA1's EEO complaint, he became angry with plaintiff and attempted to intimidate him.

53.     On or about April 28, 2015, Plaintiff provided SA1 a Notice of Right to File an EEO complaint.

Acts of Reprisal for Protected Conduct

54.     Soon after plaintiff interviewed SAC Ferrick and ASAC Kline in his capacity as an EEO counselor in connection with SA1's EEO complaint and provided SA1 with his Notice

of Right to File an EEO complaint, his FBI supervisors began to harass him and treat him differently and less favorably than other FBI employees.

55.   On or about July 1, 2015 – and shortly after he had interviewed SAC Ferrick and ASAC Kline in connection with SA1's EEO complaint – plaintiff sent an e-mail to the FBI executive management at the FBI's NHD, including SAC Ferrick and ASAC Kline, reporting what he believed to have been an abuse of authority by an FBI supervisor.

56.   On or about July 7, 2015, plaintiff's 2nd line supervisor SSA Kalish admonished him via a telephone call purportedly for sending the e-mail to the FBI's executive management (including SAC Ferrick and ASAC Kline).  On this telephone call, SSA Kalish, inter alia, berated plaintiff, accused him of being insubordinate, threatened his job, and ordered him not to contact his FBI supervisors again via e-mail.

57.   This July 7, 2015 incident marked the beginning of a pattern of discrimination, retaliation, and harassment taken against plaintiff in reprisal for his participation in the EEO Process, and later for filing his own EEO complaint against his FBI supervisors.

58.   In or about December 2015, SA1 attempted to make another informal EEO complaint to plaintiff (who was the EEO counselor that had assisted SA1 with his prior EEO complaint at the informal stage).  The new EEO complaint alleged, inter alia, claims of retaliation against SAC Ferrick and ASAC Kline.  Plaintiff attempted to assist SA1 with his informal EEO complaint of retaliation, but was advised by the FBI's EEO unit that SA1 should file his complaint directly in the formal EEO process.

59.   On or about March 23 and again on April 26, 2016, plaintiff's immediate supervisor TM DeWolfe [who as recently as on or about October 26, 2015, had rated plaintiff as

excellent on his most recent Performance Appraisal Review ("PAR")], recommended plaintiff for promotion to grade GS-12.  TM DeWolfe prepared a promotion packet which advised plaintiff's FBI Supervisors and FBI Headquarters that plaintiff was both fully qualified for and an excellent candidate for promotion to GS-12 level, inter alia, because he had worked hard to increase his knowledge base, maintained a positive work attitude, continued to accept more challenging assignments, and was generally performing at a GS-12 level.

60.     On or about April 28, 2016, however, TM DeWolfe informed plaintiff that ASAC Kline and SSA Kalish had denied his request for a promotion to the GS-12 level.  TM DeWolfe provided no reason or explanation for the FBI's decision to deny plaintiff's promotion to the GS-12 level.

61.     On or about May 2, 2016, TM DeWolfe submitted an amended promotion packet for plaintiff's promotion to the GS-12 level to FBI HQ.  The amended promotion packet prepared by TM DeWolfe falsely mischaracterized and misrepresented plaintiff's work performance as deficient in an effort to ensure that he would be denied a promotion to the GS-12 level.  In fact, the misrepresentations and mischaracterizations about plaintiff's work performance and fitness for promotion to the GS-12 level contained in the amended promotion packet are directly contradicted, inter alia, by the content of the initial performance packet prepared by TM DeWolfe, as well as all of plaintiff's many excellent PARs.

62     On or about May 2, 2016, Plaintiff met with SSA Kalish to inquire about the reason for the denial of his promotion to the GS-12 level.  SSA Kalish told plaintiff that TM DeWolfe denied the promotion due to the Plaintiff's lack of ET technical skills and his inappropriate use of the chain of command.

63.     On or about May 3, 2016, Plaintiff met with ASAC Kline to inquire about the reason for the denial of his promotion to the GS-12 level.  At this meeting, ASAC Kline shouted at, admonished, and berated plaintiff in front of other FBI employees, <u>inter</u> <u>alia</u>, for questioning the FBI's decision not to promote him to the GS-12 level.

64.     In or about April and May 2016, plaintiff began experiencing symptoms related to the extreme stress he was experiencing at work, <u>inter</u> <u>alia</u>, because of the acts of harassment, intimidation, and retaliation he was subjected to by his FBI supervisors.

65.     On or about May10, 2016, plaintiff reported the abusive, discriminatory, and retaliatory behavior directed towards him by, <u>inter</u> <u>alia</u>, ASAC Kline, SSA Kalish, and TM DeWolfe to SAC Ferrick.  But, SAC Ferrick did nothing to address plaintiff's complaints.

66.     On or about May 23, 2016, the plaintiff experienced symptoms related to the severe stress he was experiencing at work, which caused him to seek immediate medical attention.  Plaintiff was diagnosed with a medical condition which prevented him from returning to work for several weeks. Plaintiff subsequently filed for worker's compensation benefits with United States Department of Labor based on his medical condition which were granted.

67.     On or about June 10, 2016, plaintiff returned to work.  On June 10, SAC Ferrick held a meeting (which had been requested by plaintiff), and asked plaintiff how she could stop his EEO Complaints (or words to that effect).

68.     On or about June 14, 2016, plaintiff filed a formal charge of discrimination against his FBI supervisors.

69.     In response to plaintiff's complaints of discrimination, retaliation, and

harassment, and in further response to his participation in the EEO process, plaintiff's FBI

supervisors including, inter alia, SAC Ferrick, ASAC Kline, SSA Kalish, and TM DeWolfe,

escalated the acts of discrimination and reprisal taken against plaintiff, which included, but were

not limited to, the following:

A.     On or about May 18, 2016, plaintiff's FBI supervisors denied his request for a
       Temporary Duty ("TDY") assignment, without reason or explanation;

B.     On or about June 3, 2016, plaintiff was denied a training opportunity for a class
       which would directly have benefited him and provided him with additional career
       opportunities;

C.     In or about June and July 2016, plaintiff's FBI supervisors authorized and/or
       instructed the FBI's NHD security officer to conduct an unnecessary surveillance
       of plaintiff;

D.     On or about July 27, 2016, plaintiff's FBI supervisors ordered him to attend a
       negative counseling meeting at which they falsely claimed, inter alia, that
       plaintiff's work performance was deficient, and falsely accused him of failing to
       observe the FBI leave policies;

F.     On or about July 27, 2016, plaintiff's FBI supervisors served him with a
       document which purported to outline plaintiff's job performance as "minimally
       successful";

E.     On or about July 27, 2016, plaintiff's FBI supervisors rescinded his privilege to
       work a flex time schedule and ordered him to provide medical documentation for
       every use of sick leave.

70.     On or about July 27, 2016, plaintiff became ill again, due to the abusive and

discriminatory acts of his FBI supervisors.  After conducting a medical examination of plaintiff,

his physician recommended that he not return to work until he received medical clearance.

Plaintiff remained out of work until he was cleared to return to work by his physician on August

26, 2016.

71.     During the period of his physician ordered absence, plaintiff provided the FBI with all the medical documentation required by FBI regulations to document his medical leave.

73.     Nonetheless, plaintiff's FBI supervisors – who knew that plaintiff was on approved and documented medical leave – falsely marked him as being Absent without Leave ("AWOL") on August 3, 2016.

73.     Beginning in or about August 2016, the Administrative Officer ("AO") of the FBI's NHD (a member of the FBI's executive management team in the NHD field office), repeatedly reported to SAC Ferrick various acts of discrimination, retaliation, and harassment taken against plaintiff by his FBI supervisors, including ASAC Kline, ASAC O'Brien, SSA Kalish, and TM DeWolfe.

74.     On or about August 12, 2016, TM DeWolfe directed plaintiff to return the keys to plaintiff's assigned FBI vehicle directly to SSA Kalish at the FBI's New Haven office.

75.     On or about August 15, 2016, plaintiff's FBI supervisors including ASAC O'Brien, SSA Kalish, and TM DeWolfe conducted a search of plaintiff's assigned FBI vehicle and work space.

76.     On or about August 16, 2016, plaintiff's FBI supervisors referred approximately 17 allegations of misconduct against plaintiff to the FBI's Inspection Division.

77.     The FBI's Inspection Division referred the charges alleged against plaintiff to the Department of Justice Office of the Inspector General ("OIG") for investigation.

78.     The OIG conducted an investigation of the charges alleged against plaintiff by his FBI supervisors.  In or about July 2017, the OIG found that the charges alleged against plaintiff

were unfounded, meritless and suggested a retaliatory motive.  The OIG reported its findings, inter alia, to the FBI's Office of Professional Responsibility ("OPR").

79.     On or about February 22, 2018, the FBI OPR found that the charges alleged against plaintiff were unsubstantiated.

80.     When plaintiff returned to work on August 26, 2016, his FBI supervisors immediately served him with an FBI "Letter of Requirement" ("LOR") (dated August 2, 2016), which falsely claimed, inter alia, that plaintiff had misused and/or abused the FBI attendance policy and threatened his termination.  The LOR further threatened plaintiff with adverse employment actions, up to and possibly including his termination, if his FBI supervisors did not deem him to have met the requirements of the LOR.

81.     On August 26, 2016 – plaintiff's first day back at work after his medical leave of absence – his FBI supervisors again falsely marked him as being AWOL without reason or explanation.

82.     On or about August 29, 2016, plaintiff's FBI Supervisors ordered him to report for a meeting where he was issued a work performance plan which was designed to subject his work performance to extreme and intrusive monitoring and micromanagement.  No other ET in the FBI's NHD has ever been required to adhere to this type of work performance plan.

83.     On August 29, 2016, at the end of the work day, plaintiff's FBI supervisors reprimanded him and threatened him with a poor work performance evaluation, for allegedly failing to comply with one of the elements of the work performance plan issued to him earlier in the day.

84.     Plaintiff has been diagnosed with a medical condition by his physician which requires an accommodation for him to continue working at the FBI.  On or about August 25, 2016, plaintiff requested that the FBI grant him an accommodation (i.e., that he be supervised by an FBI supervisor other than the FBI supervisors who had discriminated and/or retaliated against him based on his participation in the EEO process and his own EEO complaints).

85.     On or about August 31, 2016, the FBI deemed plaintiff's requested accommodation to be reasonable and SAC Ferrick assigned him to be supervised by the Administrative Officer for the FBI's NHD.

86.     On or about September 23, 2016, SAC Ferrick rescinded the accommodation that she had initially found to be reasonable and ordered plaintiff to return to the supervision of TM DeWolfe (who is one of the FBI supervisors against whom plaintiff has made complaints of discrimination, retaliation, and harassment).

87.     While plaintiff was out on medical leave, he would periodically check and respond to all FBI e-mails (on both the unclassified and classified FBI networks).  To check his FBI e-mail on the classified network, plaintiff was accessing the FBI classified computer network at the FBI's Meriden Resident Agency ("RA") facility in the NHD.  On or about September 14, 2016, plaintiff's FBI supervisors banned and, in fact, locked him out of the FBI's Meriden RA without reason or explanation.  At that time, no other ET in the FBI's NHD was similarly banned from the Meriden RA.

88.     On or about September 15, 2016, plaintiff's FBI supervisors caused a fraudulent and frivolous "insider threat" investigation to be commenced against him.  By initiating such an investigation against plaintiff, his FBI supervisors had effectively labeled him as someone who

poses a physical, terrorist, intelligence, or other security risk to the FBI (e.g., someone who is spying on the FBI).

89.     The medical condition with which plaintiff was diagnosed in May 2016, has prevented him from returning to work since in or about September 2, 2016.

90.      The FBI continues to refuse to make a reasonable accommodation for plaintiff's medical condition.  As a result, plaintiff continues to be on extended leave from the FBI related to his medical condition.

## FIRST CAUSE OF ACTION

91.     Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "90" inclusive as if fully set forth herein at length.

92.     Plaintiff engaged in protected activity under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. by, inter alia, participating in the EEO process and making EEO complaints of discrimination, retaliation, and harassment against his FBI supervisors.

93.     The actions of defendants in discriminating and retaliating against plaintiff because of his protected activity, including but not limited to his participation in the EEO process and his opposition to the discriminatory and retaliatory practices of defendants violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq.

94.     As a proximate result of the foregoing, plaintiff has lost wages, benefits, and professional opportunities, suffered mental anguish and humiliation, and incurred damages thereby.

## SECOND CAUSE OF ACTION

95.     Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "90" inclusive as if fully set forth herein at length.

96.     Plaintiff engaged in protected activity under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. by, inter alia, participating in the EEO process and making EEO complaints of discrimination, retaliation, and harassment against his FBI supervisors.

97.     The actions of defendants which subjected plaintiff to a pattern of harassment in the work place which was pervasive created a hostile work environment for plaintiff in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq.

98.     As a proximate result of the foregoing, plaintiff has lost wages, benefits, and professional opportunities, suffered mental anguish and humiliation, and incurred damages thereby.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff respectfully prays for a judgment:

A.     Declaring that the actions of defendants complained up herein were unlawful and in violation of Title VII;

B.     Ordering preliminary and permanent injunctive relief prohibiting future retaliation against plaintiff and other similarly situated employees for lawful participation and/or opposition protected under Title VII of the Civil Rights Act of 1964 as amended;

C.     Ordering defendants to promote plaintiff to the GS-12 level and the appropriate step;

D.      Ordering defendants to pay plaintiff full back pay and retroactive benefits and seniority;

E.      Ordering defendants to pay plaintiff appropriate compensatory damages for emotional distress;

F.      Awarding plaintiff costs, disbursements and reasonable attorneys fees, including those costs, disbursements, and attorneys fees incurred at the administrative level;

G.      Granting the plaintiff such other and further relief as to this Court may seem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.


**THE PLAINTIFF,**


By:   /s/ *Amanda M. DeMatteis*

Ethan Levin-Epstein  *(ct01566)*
Amanda M. DeMatteis (*ct29413*)
GARRISON, LEVIN-EPSTEIN,
        FITZGERALD & PIRROTTI, P.C.
405 Orange Street
New Haven, CT  06511
Tel.:  (203) 777-4425
Fax:  (203) 776-3965
E-mail:  elevin-epstein@garrisonlaw.com
            adematteis@garrisonlaw.com

and

James M. Thayer [Pro Hac Vice]
GORDON, GORDON & SCHNAPP, P.C.
30 Broad Street, 21st Floor
New York, NY  10004
Tel.:  (212) 355-3200
E-mail:  kegoffice@aol.com
            james.thayer@ggslawfirm.com

## **CERTIFICATE OF SERVICE**

This is to certify that on this 11th day of June, 2018 a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties, as listed below, by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's system.

/s/ *Amanda M. DeMatteis*
Amanda M. DeMatteis